**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **HALLEIGH MORRIS**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**MAKO PIZZA LLC**, d/b/a DOUGHBOY SWIFT, a Florida limited liability company,<br><br>Defendant. | **CIVIL ACTION**<br><br>**Case No. 8:25-cv-3186**<br><br>**Judge:**<br><br>**Mag. Judge:** |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

NOW COMES the Plaintiff, HALLEIGH MORRIS ("MORRIS" or "Plaintiff"), by and through undersigned counsel, and states the following for her Complaint:

## <u>CAUSES OF ACTION</u>

1. This is an action brought under Title VII of the Civil Rights Act of 1964 (Title VII) and the Florida Civil Rights Act (FCRA) for (1) sexual harassment in violation of Title VII, (2) sexual harassment in violation of the FCRA, (3) retaliation in violation of Title VII, and (4) retaliation in violation of the FCRA.

## <u>PARTIES</u>

2. The Plaintiff, HALLEIGH MORRIS ("MORRIS"), is an individual and a resident of Florida who at all material times was domiciled in Sarasota County,

Florida, and who performed services for the Defendant in Sarasota County, Florida.

3. Defendant, MAKO PIZZA LLC, d/b/a DoughBoy Swift ("Defendant"), is a Florida limited liability company with its principal place of business at 2881 Clark Road, Suite 23, Sarasota, Florida 34231. At all material times, Defendant employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and employed MORRIS in Sarasota County, Florida.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this matter under 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over MORRIS's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the United States District Court for the Middle District of Florida because MORRIS resided in, the Defendant conducts business in, and some or all of the events giving rise to MORRIS's claims occurred in Sarasota County, Florida, which is within the Middle District of Florida. Venue is proper in the Tampa Division under Local Rule 1.04 since the action accrued in Sarasota County, which is within the Tampa Division.

7. On or about October 21, 2025, MORRIS filed a Charge of Discrimination alleging sexual harassment and retaliation with the United States Equal Employment Opportunity Commission ("EEOC"), dual-filed with the Florida

Commission on Human Relations, EEOC Charge No. 510-2026-02333. More than 180 days passed without a determination on the Charge. On or about August 24, 2026, the EEOC issued MORRIS a Notice of Right to Sue, and the instant Complaint is filed within the time frame required under the law. (A true and accurate copy of the Notice of Right to Sue is attached as Exhibit 1.)

## GENERAL ALLEGATIONS

8. In or about May 2025, MORRIS began working for the Defendant as a bartender/server. On or about June 9, 2025, MORRIS was assigned to work at Defendant's DoughBoy Swift restaurant in Sarasota, Florida.

9. MORRIS always performed her assigned duties in a professional manner and was well qualified for her position.

10. Defendant was owned and managed by Jeremy Rice and Broc Smith. Defendant also employed Robert ("Rob") Creen as its head chef and Jose Lugo as a dishwasher.

11. Beginning in or about July 2025, MORRIS was subjected to sexual harassment by Lugo and Creen.

12. On or about July 9, 2025, Lugo approached MORRIS at the bar and told her, "If I was about 50 years younger, you would be mine." On or about July 17, 2025, Lugo told MORRIS he wanted to meet her parents and ask for her hand in marriage. Lugo repeatedly commented on how good MORRIS looked.

13. On or about August 28, 2025, Lugo sang about how little MORRIS's shorts were and how good she looked in them. The next day, when MORRIS wore jeans, Lugo told her she should never wear them again because he has to see her legs while she is working.

14. Lugo grabbed MORRIS's waist multiple times while trying to "hug" her. On or about September 11, 2025, Lugo approached MORRIS, put his hand around her waist, smelled the top of her head, and whispered in her ear how "sexy" she smelled, in front of a co-worker.

15. Creen repeatedly called, FaceTimed, and texted MORRIS late at night and after closing, including on or about July 19, August 3, August 14, August 15, August 23, September 7, and September 13, 2025, often after midnight.

16. In or about August 2025, after MORRIS told Creen she was not interested in him, Creen said of a married female co-worker, "It doesn't matter if she's married, she still has a hole, the wedding ring can't block her hole."

17. On or about August 20, 2025, Creen told MORRIS she should not be wearing her shorts because men will want to do things to her and cannot help themselves, and told her that her parents would let him do anything to her.

18. On or about August 28, 2025, the owner directed Creen to walk MORRIS to her car after her shift. Creen, who was intoxicated, stood in

MORRIS's driver-side doorway, prevented her from closing her car door, and asked for a ride home with her. After MORRIS refused and left, Creen texted her, "I really just want you."

19. On or about September 3, 2025, Creen texted MORRIS that "I only want mine" and "I don't want anything but my girl." On or about September 7, 2025, Creen called MORRIS repeatedly after midnight and, while speaking with police, identified MORRIS by her full name as "his girl."

20. MORRIS never welcomed, invited, or consented to any of this conduct.

21. On September 13, 2025, MORRIS reported the sexual harassment in writing, by text message, to owner Jeremy Rice. She described Creen's late-night calls and boundary-crossing, and Lugo grabbing her waist and smelling her hair, and stated, "This is sexual harassment."

22. Rather than remove the harassers, Rice told MORRIS she could not work her scheduled shift that evening, while Creen and Lugo both continued working.

23. On September 14, 2025, Rice removed MORRIS from all of her scheduled shifts for the following week, asked whether she was resigning, and refused her request to restore a shift on which neither harasser was scheduled, stating he needed the time to train new people.

24. On or about September 20, 2025, Creen pressured MORRIS to go outside alone after dark to retrieve the restaurant's flags, a task Defendant's owners had previously deemed unsafe for her and which Creen had always done before her complaint. When MORRIS had her father walk her to her car for her safety, Rice mocked her the next day, asking, "Is your daddy going to show up tonight?"

25. On or about September 23, 2025, Creen told a co-worker, "I'm getting rid of Halleigh now because she was sweet at first but now she's psychotic."

26. After her complaint, Defendant moved MORRIS from her regular evening shifts to lower-earning morning shifts, stopped scheduling her for weeks at a time, stopped giving her cash tips, and passed her over for the bar manager position, while continuing to employ Creen and Lugo. On or about October 1, 2025, Lugo glared at MORRIS and, in a threatening tone, told her to tell her parents he said hi.

27. On or about December 7, 2025, while MORRIS remained available to work, Rice posted an advertisement seeking to hire bartenders.

28. On or about December 16, 2025, Rice informed MORRIS that he had deactivated her scheduling and payroll accounts. Defendant's payroll records reflect that MORRIS's employment was terminated effective November 24, 2025.

29. Upon information and belief, Defendant took no disciplinary or remedial action against Creen or Lugo.

30. The Defendant has violated Title VII and the FCRA.

**COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, SEXUAL HARASSMENT**

31. Plaintiff incorporates by reference Paragraphs 1–30 of this Complaint as though fully set forth below.

32. MORRIS is a female and, as such, is a member of a protected class.

33. At all material times, MORRIS was an employee and Defendant was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

34. MORRIS was qualified for the position she held with the Defendant.

35. MORRIS endured sexual harassment, sex-based comments, unwelcome sexual advances, unwanted sexual touching, intimidation, and disparate treatment while employed, thereby altering the terms and conditions of her employment and creating a hostile work environment.

36. Defendant knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

37. The acts, failures to act, practices, and policies set forth above constitute intentional discrimination on the basis of MORRIS's sex in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2.

38. As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq., as referenced and cited herein, MORRIS has lost benefits and privileges of her employment and has been substantially and significantly injured in her career path.

39. As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq., as referenced and cited herein, and of the prohibited acts perpetrated against her, MORRIS is entitled to all relief necessary to make her whole as provided for under 42 U.S.C. § 2000e et seq.

40. As a direct and proximate result of Defendant's actions, MORRIS has suffered damages, including but not limited to a loss of employment opportunities, lost wages and tips, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for mental and emotional distress.

41. MORRIS has exhausted her administrative remedies, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites, and other compensation for employment, including lost wages and tips, which Plaintiff would have received had she maintained her position with the Defendant, plus interest;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages; and

vii. Such other relief as this Court shall deem appropriate.

## COUNT II – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992, SEXUAL HARASSMENT

42. Plaintiff incorporates by reference Paragraphs 1–30 of this Complaint as though fully set forth below.

43. MORRIS is a female and, as such, is a member of a protected class.

44. At all material times, MORRIS was an employee, and the Defendant was her employer covered by and within the meaning of the FCRA.

45. MORRIS was qualified for the position she held with the Defendant.

46. MORRIS endured sexual harassment, sex-based comments, unwelcome sexual advances, unwanted sexual touching, intimidation, and disparate treatment while employed with Defendant, thereby altering the terms and conditions of her employment and creating a hostile work environment.

47. Defendant knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

48. The acts, failures to act, practices, and policies of Defendant set forth above constitute intentional discrimination on the basis of MORRIS's sex in violation of the FCRA.

49. As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, MORRIS has lost benefits and privileges of her employment and has been substantially and significantly injured in her career path.

50. As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, and of the prohibited acts perpetrated against her, MORRIS is entitled to all relief necessary to make her whole as provided for under the FCRA.

51. As a direct and proximate result of Defendant's actions, MORRIS has suffered damages, including but not limited to a loss of employment opportunities, lost wages and tips, loss of past and future employment income

and fringe benefits, humiliation, and non-economic damages for mental and emotional distress.

52. MORRIS has exhausted her administrative remedies, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites, and other compensation for employment, including lost wages and tips, which Plaintiff would have received had she maintained her position with the Defendant, plus interest;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages; and

vii. Such other relief as this Court shall deem appropriate.

## COUNT III – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, RETALIATION

53. Plaintiff incorporates by reference Paragraphs 1–30 of this Complaint as though fully set forth below.

54. MORRIS is a female and, as such, is a member of a protected class.

55. At all material times, MORRIS was an employee, and the Defendant was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

56. MORRIS was qualified for the position she held with the Defendant.

57. MORRIS endured continuous sexual harassment, sex-based comments, unwelcome sexual advances, unwanted sexual touching, and intimidation while employed with Defendant, thereby altering the terms and conditions of her employment and creating a hostile work environment, which, after MORRIS complained, caused the separation of her employment with Defendant.

58. MORRIS complained in writing to Defendant's owner about the sexual harassment and hostile work environment.

59. MORRIS's complaint constitutes protected activity because it opposed conduct made unlawful by Title VII.

60. Immediately after her complaint, Defendant removed MORRIS from the schedule, reduced her hours and earning opportunities, and ultimately terminated her employment, while the employees she reported continued working without discipline.

61. MORRIS's protected activity was the proximate cause of Defendant's adverse employment actions against her.

62. Instead of preventing said treatment, Defendant retaliated against MORRIS.

63. The acts, failures to act, practices, and policies of Defendant set forth above constitute retaliation in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

64. As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq., as referenced and cited herein, MORRIS has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

65. As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq., as referenced and cited herein, and of the prohibited acts perpetrated against her, MORRIS is entitled to all relief necessary to make her whole as provided for under 42 U.S.C. § 2000e et seq.

66. As a direct and proximate result of Defendant's actions, MORRIS has suffered damages, including but not limited to a loss of employment

opportunities, lost wages and tips, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for mental and emotional distress.

67. MORRIS has exhausted her administrative remedies, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites, and other compensation for employment, including lost wages and tips, which Plaintiff would have received had she maintained her position with the Defendant, plus interest;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages; and

vii. Such other relief as this Court shall deem appropriate.

## COUNT IV – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992, RETALIATION

68. Plaintiff incorporates by reference Paragraphs 1–30 of this Complaint as though fully set forth below.

69. MORRIS is a female and, as such, is a member of a protected class.

70. At all material times, MORRIS was an employee, and the Defendant was her employer covered by and within the meaning of the FCRA.

71. MORRIS was qualified for the position she held with the Defendant.

72. MORRIS endured continuous sexual harassment, sex-based comments, unwelcome sexual advances, unwanted sexual touching, and intimidation while employed with Defendant, thereby altering the terms and conditions of her employment and creating a hostile work environment, which, after MORRIS complained, caused the separation of her employment with Defendant.

73. MORRIS complained in writing to Defendant's owner about the sexual harassment and hostile work environment.

74. MORRIS's complaint constitutes protected activity because it opposed conduct made unlawful by the FCRA.

75. Immediately after her complaint, Defendant removed MORRIS from the schedule, reduced her hours and earning opportunities, and

ultimately terminated her employment, while the employees she reported continued working without discipline.

76. MORRIS's protected activity was the proximate cause of Defendant's adverse employment actions against her.

77. The acts, failures to act, practices, and policies of Defendant set forth above constitute retaliation in violation of the FCRA.

78. As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, MORRIS has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

79. As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, and of the prohibited acts perpetrated against her, MORRIS is entitled to all relief necessary to make her whole as provided for under the FCRA.

80. As a direct and proximate result of Defendant's actions, MORRIS has suffered damages, including but not limited to a loss of employment opportunities, lost wages and tips, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for mental and emotional distress.

81. MORRIS has exhausted her administrative remedies, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites, and other compensation for employment, including lost wages and tips, which Plaintiff would have received had she maintained her position with the Defendant, plus interest;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages; and

vii. Such other relief as this Court shall deem appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States Constitution, the Plaintiff demands a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: October 20, 2026 **s/ Benjamin H. Yormak**
Benjamin H. Yormak

Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT &DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com